IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEENAN QUINN | CRIMINAL ACTION<br><br>NO. 09-720-02 |

**MEMORANDUM**

Baylson, J.                                                                                                                February 2, 2023

I.     **INTRODUCTION**

On September 30, 2010, Defendant Keenan Quinn was found guilty by a jury of, among other things, one count of aiding and abetting the brandishing of a firearm while committing a violent crime, in violation of 18 U.S.C. § 924(c). Quinn's conviction and sentence was affirmed on appeal on March 17, 2013. ECF 100. Quinn filed a collateral attack of his conviction under 28 U.S.C. § 2255 on April 20, 2015, which was amended as of May 27, 2015. The Government responded on September 14, 2015 (ECF 112). This case has been transferred to different judges. An Order denying the motion was entered by this Court on October 20, 2022 (ECF 137). Defense counsel filed a Motion for Reconsideration on October 28, 2022 (ECF 138).

This Court will now review the three issues presented by the Motion for Reconsideration which can be summarized as follows:

      A. The evidence presented at trial was insufficient to prove the mens rea (knowledge) element, in violation of Fifth Amendment Due Process.

      B. The movant was denied the effective assistance of counsel on direct appeal, in violation of the Sixth Amendment, when his then-attorney failed to include in the opening appellate brief the issue – preserved at trial – of the trial court's refusal to instruct the jury further (and correctly), in response to a question during deliberations concerning the knowledge element for Count 3.

      C. Because the indictment contained no averment of brandishing and the jury was not asked to determine that fact, the sentence on Count 3 was illegal

under the Fifth and Sixth Amendments insofar as the Court believed the mandatory minimum consecutive term to be seven years rather than five.

## II.  FACTUAL BACKGROUND

### A.  The Bank Robbery

On August 29, 2009, at approximately 9:30 a.m., Defendant Quinn drove to the Henderson Square shopping mall in King of Prussia, Pennsylvania, to meet his co-defendant, Shawn Johnson.  Once he arrived at the mall, Johnson got into Quinn's car and Quinn drove him across the parking lot to the National Penn Bank at 304 South Henderson Road in King of Prussia.  9/28/10 Tr. 136.  Johnson got out of the car and Quinn drove across the parking lot, parking out of sight behind the Genuardi's supermarket.  Id.  Johnson entered the bank and approached teller Alicia Miller.  9/28/10 Tr. 4-5.  After brief conversation, Johnson pointed a silver handgun at her and handed a check with the writing: "give me $50,000 fast or get shot!!!"  Id.  The bank employees gave him money, later revealed to total around $10,000.  Id. at 5-6.  A GPS tracking device was hidden within the money, along with some bait bills.  9/29/10 Tr. 4-10.

### B.  The Suspects are Apprehended

Johnson fled the bank and Miller immediately called police.  9/28/10 Tr. 7.  Johnson ran directly to Quinn's car, hidden behind the Genuardi's.  The GPS tracker monitored Johnson's movements.  9/29/10 Tr. 4-10.  Johnson got into Quinn's car and Quinn left the parking lot and drove to a nearby house owned by his aunt, Cynthia Bellinger.  9/29/10 Tr. 96-97.  The two men entered Bellinger's house and went to the basement.  There, Johnson hid the gun and his clothing.  9/29/10 Tr. 100.

Minutes later, officers of the Upper Merion Police Department tracked the GPS device to the house where Quinn's aunt lived.  9/28/10 Tr. 88-90.  There, the officers spoke to a contractor working nearby, who said that he had just seen two men (one of whom matched the suspect

description provided by the bank employees) park a blue Chevrolet Malibu in front of a nearby home, quickly exit the car, and enter a nearby residence. 9/28/10 Tr. 74-78. The officers then set up a perimeter around the row of townhouses that included Quinn's aunt's home. 9/28/10 Tr. 81. Bellinger came out of her house and approached the officers. 9/28/10 Tr. 90-93. Bellinger told the officers that her nephew, Quinn, pulled up with another man she did not know. Bellinger followed the two men into the basement of her house. She then followed Johnson to the kitchen and saw him banging on something with a knife handle. Bellinger also saw Johnson putting money into a bowl of water. 9/28/10 Tr. 92-93. Bellinger then gave the officers Quinn's cell phone number. 9/28/10 Tr. 93. The police called Quinn on his cell phone. Quinn said that he and Johnson "were just downstairs playing pool in the basement." 9/28/10 Tr. 94. Eventually, Quinn left the house and was arrested. The officers used Quinn's cell phone to call Johnson, who then left the house and was also arrested.

That afternoon, the police obtained a search warrant for Bellinger's house. Officers recovered the following from the basement: (1) a shopping bag containing $9,243; (2) a suitcase containing an unloaded silver handgun; and (3) a glass bowl filled with water containing a $50 "bait bill" and the attached GPS tracking unit. 9/28/10 Tr. 103-112. Every "bait bill" stolen from the bank was recovered during the search.

### III.   ISSUE OF INSUFFICIENT EVIDENCE WAS NOT PRESERVED

As to Quinn's first argument that the Government presented insufficient evidence to prove the required *mens rea* for the aiding and abetting count, the Government argues that Quinn's claim fails because Quinn did not challenge the sufficiency of the evidence on direct appeal resulting in a procedural default of the claim, and because any rational trier of fact would still have found Quinn guilty beyond a reasonable doubt of aiding and abetting. Based on review

3

of the briefs and relevant law, this Court will reject Quinn's defenses to procedural default and dismiss the "sufficiency-of-the-evidence" claim as defaulted.

### A. Quinn Cannot Overcome Procedural Default

The Government correctly argues that Quinn's claim was procedurally defaulted when Quinn did not raise a "sufficiency of the evidence" argument in the direct appeal from his trial conviction. Quinn concedes as much in his brief. Quinn can overcome procedural default by showing cause for the default as well as prejudice as a result of the default. See Bousley v. United States, 523 U.S. 614, 622 (1998). Quinn originally argued that the Supreme Court's decision Rosemond v. United States, 572 U.S. 65 (2014), decided while Quinn's direct appeal was pending, should be considered a change in controlling law for default purposes. See ECF 106, Quinn's Amended Motion to Vacate at 5. In Rosemond, the Supreme Court clarified the elements required to prove aiding and abetting the use of a firearm in a drug-trafficking offense by holding that a defendant must know beforehand that one of his confederates will perform the offense while carrying a gun. Rosemond, 572 U.S. at 82-83. But Quinn now concedes that Third Circuit precedent was already aligned with the elements laid out in Rosemond at the time of Quinn's conviction. See United States v. Price, 76 F.3d 526, 530 (3d Cir. 1996) ("prior knowledge" of firearm a required element of aiding and abetting use of a firearm during bank robbery); Berry v. United States, No. 16-3489, 2022 WL 970154, at *5 (D.N.J. Mar. 31, 2022) (elements in Rosemond the same as in Price).

Instead, Quinn now argues that his court-appointed appellate counsel's ineffectiveness establishes sufficient cause, specifically that counsel's failure to raise a "sufficiency of the evidence" argument on direct appeal plainly constitutes cause to overcome procedural default. See Bousely, 523 U.S. at 622 (ineffective assistance of counsel may constitute cause to

4

overcome procedural default); see also Edwards v. Carpenter, 529 U.S. 446 (2000) (a prisoner may assert ineffective assistance as cause for the procedural default of another claim). Quinn asserts support for this argument by stating that his appellate counsel only submitted a 25-page brief to the Third Circuit when the maximum page-limit is 55 pages, and that raising a "sufficiency of the evidence" argument would have been meritorious given the lack of evidence produced at trial tending to establish the prior knowledge element.

Quinn does not establish cause and prejudice for his "insufficiency of the evidence" argument to overcome its procedural default. Quinn cannot overcome his procedural default because he does not establish that his appellate counsel's failure to raise a lack of evidence argument on direct appeal prejudiced his case on appeal. Ineffective assistance of counsel is established by showing counsel was deficient under an objective standard of reasonableness and that this deficient performance resulted in prejudice. See Strickland v. Washington, 466 U.S. 668, 691-92 (1984). Establishing prejudice for purposes of an ineffective assistance claim requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Thornton, 327 F.3d 268, 271 (3d Cir. 2003) (internal quotes omitted).

It is undisputed that Quinn's comrade, Shawn Johnson, who actually went into the bank and robbed it did so while carrying a firearm. The evidence from the jury trial, which includes evidence tending to show Quinn had prior knowledge that Johnson was planning to use a firearm to rob the bank, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Quinn was guilty of aiding and abetting the use of a firearm under the prior-knowledge elements laid out by the Third Circuit in Price and later by the Supreme Court in Rosemond. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (the "critical inquiry on review of the sufficiency

of the evidence" claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Quinn testified at the trial that Johnson, called and asked him merely "for a ride," but this was found to be false when FBI-obtained phone records did not show Johnson had called Quinn. See ECF 112, Government's Response at 15. Two of Quinn's cellmates testified at the trial that Quinn had told them he planned the robbery. Id. at 16. And before Johnson emerged from Quinn's car to commit the robbery, Quinn saw the note that Johnson had written on the back of the check that he gave to the bank teller, and which read "give me $50,000 fast or get shot!!!" Id. at 3-4; see ECF 115, Quinn's Reply at 10. These facts viewed in the light favorable to the Government would, in the opinion of the Court, allow a reasonable trier to find that Quinn had prior knowledge that Johnson would use a firearm to commit the bank robbery, satisfying the elements laid out in Price and Rosemond. Therefore, Quinn fails to establish cause and prejudice to excuse his procedural default on this claim, and Quinn's claim must be rejected.

IV. **ASSERTION OF INEFFECTIVE ASSISTANCE OF COUNSEL WILL BE DENIED.**

The second issue Quinn raises in post-conviction appeal is ineffective assistance of counsel. Specifically, Quinn argues that his appellate counsel failed to preserve and raise an objection that his trial counsel made during the criminal trial.

Trial counsel had objected to the Court's response to a jury question during deliberations. The jury question can be summarized as follows: when applying the aiding and abetting statute (18 U.S.C. § 924(c)) to the charge of use and carrying a firearm in connection with a crime of violence, did Quinn have to know that his confederate had a gun to be guilty of aiding and abetting him? Trial counsel argued that this was necessary. The Court disagreed, arguing that

such a reading was too narrow, and declined to answer the jury's question in the manner requested by Quinn.

Quinn's appellate counsel did not pursue this issue on appeal. Quinn now argues that not pursuing the issue constituted ineffective assistance of counsel because the objection had merit, was reasonably likely to result in a reversal on one of the criminal counts, and was at least as strong as the issues that were preserved and pursued. The Government contends that the objection did not have merit and therefore omitting it was a sound strategic choice by counsel. The objection lacks merit because the instructions were clear enough that declining to respond to the jury question as requested was not prejudicial. Appellate counsel was not objectively unreasonable in declining to pursue it and thus was not ineffective.

Moreover, prejudice to Defendant must be shown under Strickland v. Washington. 466 U.S. 668, 691-92 (1984). Specifically, Defendant must show that there is a reasonable probability that a different outcome would have resulted if the objection had been pursued on appeal. There is not a reasonable probability that a different outcome would have occurred. As addressed above, there was considerable evidence on the record that Quinn knew his confederate had a gun. Thus, even if Defendant had prevailed on the objection that knowledge of the gun should have been included as an explicit element, it would not have changed the jury's verdict on the aiding and abetting charge.

Two conclusions follow, both fatal to Defendant's claim: (1) even if declining to pursue the objection would otherwise be objectively unreasonable, appellate counsel was not unreasonable here because any error would constitute harmless error in the face of the evidence of Quinn's knowledge; and (2) even if it was objectively unreasonable not to pursue the objection, Quinn was not prejudiced by that failure: there is not a reasonable probability that the

jury would have had a reasonable doubt that Quinn knew about Johnson's gun.

### A. Legal Standard – Ineffective Assistance of Counsel

The standard for ineffective assistance of counsel remains the standard outlined by the Supreme Court in Strickland. "A defendant who claims ineffective assistance of counsel must prove (1) that counsel's representation fell below an objective standard of reasonableness. . . and (2) that any such deficiency was "prejudicial to the defense." Garza v. Idaho, 139 S. Ct. 738, 733-34 (2019) (citing Strickland, 466 U.S. at 687-88, 692). "[I]t is critical that courts be highly deferential to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." United States v. Sepling, 944 F.3d 138, 151 (3d Cir. 2019) (citing Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002)).[1]

Here, this standard must be applied to the decision by appellate counsel not to pursue the objection detailed above. "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was *plainly* stronger than those actually presented to the appellate court." See Davila v. Davis, 137 S. Ct. 2058, 2067 (2017) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000))") (*emphasis added*).

### B. Lack of Prejudice

Of the two Strickland prongs, the prejudice prong is both dispositive and more easily resolved. Under Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[1] However, Strickland is not a complete bar. For example, "ineffectiveness is generally clear in the context of complete failure to investigate because counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made." Sepling, 944 F.3d at 151 (citing United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)). Plaintiff has not established any such failure to investigate.

different." Strickland, 466 U.S. at 694.  No reasonable probability exists here.  The objection that Defendant believes should have been pursued on appeal was that court declined to answer a jury question with an explicit statement that Quinn's knowledge of the firearm was necessary.  However, there was adequate evidence established at trial that Quinn did know about the gun.  See supra Section IV.  Based on that evidence – and the jury's verdict against Quinn on the charge of armed robbery (which, crucially, includes a finding that Quinn had the requisite *mens rea* on the charge of armed robbery) – no reasonable probability exists that a rational juror would have found reasonable doubt on the aiding and abetting charge, even if the judge had answered the jury question as Defendant insists.

This lack of prejudice is dispositive and fatal to Defendant's ineffective assistance claim.

**C.     Objective Reasonableness of Counsel: The Merits of the Objection**

For completeness, the Court considers the first Strickland prong as well - whether it was objectively reasonable for appellate counsel not to include this objection in the appellate argument.  The relevant inquiry is whether the omitted argument was plainly stronger than the arguments actually argued on appeal.  Ultimately, the objection does not have sufficient merit to grant Defendant's motion.

Admittedly, Defendants makes some credible arguments.  The parties dispute whether Third Circuit precedent at the time of appeal had established a requirement that the defendant must know that their co-defendant had a weapon to be guilty of aiding and abetting a "use and carry" charge.[2]  Both parties rely on United States v. Price to argue that the state of the law at the time supports their case.  76 F.3d 526 (3d Cir. 1996).  But it is unclear which side is correct from

---

[2]     It is undisputed that in the years since, the Supreme Court has held that advance knowledge that a confederate would use or carry a gun during the crime's commission is a necessary element of the offense.  Rosemond v. United States, 572 U.S. 65, 67 (2014).

that case.[3]

However, U.S. v. Garth, cited by Defendant in the reply brief, shows that this requirement was established at the time of the trial. In Garth, the Third Circuit held that evidence of knowledge of a gun was not sufficient to aid and abet a use and carry charge, but rather that knowledge of specific intent to use the gun in the commission of a crime was required. United States v. Garth, 188 F.3d 99, 113-14 (3d Cir. 1999). Knowledge of specific intent to use a gun cannot be formed without underlying knowledge of the gun. Thus, the Third Circuit had held that knowledge of the gun is a required element by the time Quinn's criminal case went to trial.

Even so, the trial judge did not instruct the jury that knowledge of the gun was not a requirement. Instead, the Court declined to answer the question and provided the jury with the previous written instruction, as well as the instruction previously read about both the aiding and abetting charge and the use and carry of a firearm charge "so that they know what the elements are for both." Those instructions included the following:

---

[3] Price does not have a precise holding on whether a defendant must have knowledge of their co-defendant's possession of a gun to aid and abet the use and carrying of a gun in connection with a violent crime. But the Third Circuit does conduct a harmless error analysis which required the panel to decide whether the defendant there aided and abetted in the "use and carrying" offense – the same charge at issue here. Price, 76 F.3d at 529-530. That analysis focuses entirely on demonstrating that the defendant was aware that firearms were used. Id. Put another way: the panel did not state a rule that knowledge of the co-defendant's firearm was a necessary element of the charge. But proceeded to establish defendant's guilt by demonstrating his knowledge.

Thus, at the very least, the Third Circuit concluded that knowledge of the possession of the firearm was sufficient to support the aiding and abetting charge. It is also difficult to conclude that this analysis is mere dicta, as the harmless error finding was necessary to affirm the district court's judgment. Still, there is no clear statement from the Third Circuit in Price that knowledge of the firearm is a necessary element to find that a defendant aided and abetted the "use and carrying" by the co-defendant.

- "The government alleges that the defendant aided and abetted Shawn Johnson in committing armed bank robbery and using and carrying a firearm."

- "In order to find the defendant guilty [of] . . . using and carrying a firearm during a crime of violence because he aided and abetted Shawn Johnson in committing these offenses, you must find that the government has proven beyond a reasonable doubt each of the following four requirements or elements."

- "The government must prove that the defendant knew that the offenses charged were going to be committed or were being committed by Shawn Johnson."

Resp. at 21-22 (citing 9/30/10 Tr. 19-27).

While the trial judge did not explicitly connect the dots as Defendant insists it should have, the court did instruct that (1) the crime of aiding and abetting requires knowledge that the offense was going to be committed or was being committed; and (2) Quinn was charged with aiding and abetting the commission of was "use and carrying of a firearm during a crime of violence."

From those instructions, it is necessary to infer that to find a party guilty of aiding and abetting the use and carrying of a firearm during a crime of violence, the jury must find that Quinn knew (either in advance or contemporaneously) that Johnson was using and carrying a gun. While the trial judge did not clarify this inference to the jury in the manner Defendant would have preferred during the trial, the Court will not conclude that the jury assumed the opposite – nor that the trial judge encouraged them to do so. Given the instructions the jury received, it is arguably likelier that the jury read them to require knowledge of the gun than the opposite. In any case, Defendant's claim that he was adversely affected by the court's decision not to answer the jury question is speculative. The fact that the jury asked a clarifying question

that was declined does not mean the instructions were faulty or ultimately misunderstood. Thus, the merits of the objection were limited and the decision not to pursue the issue further on appeal was not objectively unreasonable.

With this context, the Court now considers whether the objection by trial counsel was <u>plainly</u> stronger than the arguments preserved and pursued at appeal. This is a deferential standard. Quinn's appellate counsel raised two issues on appeal. <u>See</u> Reply at 5. Neither ultimately prevailed, but the Court of Appeals considered the appeal *en banc* and overturned the Circuit precedent on which counsel relied to reject the appeal. <u>Id</u>. These are strong indicators that at least one of the issues preserved and pursued on appeal was strong. Plaintiff explicitly concedes as much.[4] <u>Id</u>. By comparison, the objection to the Court's response to the jury questions was a less powerful argument. Thus, it was not objectively unreasonable for appellate counsel to narrow down the appeal to focus on those issues instead of the court's decision not to answer the jury question. <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983)) ("[The] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy").

### D. Denial of Evidentiary Hearing

Defendant asserts that an evidentiary hearing is typically required for a 28 U.S.C. § 2255 petition. However, a judge can summarily dismiss a petition under Rule 4(b) of the Rules Governing § 2255 proceedings "if it plainly appears from the face of the motion and any annexed

---

[4] Plaintiff attempts to get around this issue by highlighting that the petition was significantly shorter than the permitted length allowed under the court's rules. Reply at 5. But filling space in a brief with arguments deemed less effective is not necessarily a hallmark of effective advocacy.

exhibits and prior proceedings in the case that the movant is not entitled to relief." The government argues that there are no issues of fact, and the record affirmatively shows that the claim for relief is without merit. In such circumstances, a district court has discretion to dismiss without a hearing under established Third Circuit precedent. See, e.g., United States v. Lilly, 536 F.3d 190, 197 (3d Cir. 2008) (district court did not abuse its discretion in declining to hold an evidentiary hearing on defendant's claim of ineffective assistance of counsel).

Defendant argues that a hearing is warranted because evidence has not established whether omitting the issue of appeal was a strategic choice or a mistake. But the answer to that question is irrelevant because Defendant was not prejudiced by the omission and therefore cannot prevail under Strickland regardless.

## V.   "BRANDISHING" ARGUMENT – SENTENCE WAS NOT ILLEGAL

Defendant argues that the sentence imposed by the Court relied on a seven-year mandatory minimum for "brandishing" a weapon rather than a five-year mandatory minimum for "carrying" a weapon. ECF 106 at 6. Defendant argues that under Alleyne v. U.S., only a five-year sentence was warranted because the indictment and jury instructions included the word "carrying" instead of "brandishing."

The Government argues that Alleyne does not apply retroactively on collateral review. (ECF 112 at 29-31). The Government notes that the Third Circuit has definitively ruled on this issue, holding in United States v. Reyes that Alleyne sets out a new rule of law, but is not retroactively applicable to cases on collateral review.

In United States v. Reyes, the Third Circuit was presented with the question of whether the 2013 Supreme Court decision of Alleyne v. U.S. could apply retroactively to a conviction and sentence issued in 2006. 755 F.3d 210, 211 (3d Cir. 2014). Citing its related opinion in United

13

States v. Winkelman, et al., 746 F.3d 134 (3d Cir. 2014), the Third Circuit affirmed the district court's order denying Reyes' petition. Reyes, 755 F.3d at 211. The Third Circuit clarified that Alleyne was, indeed, a new rule, and that it did not apply retroactively. Id. at 212. The only "limited" circumstances that would result in a new rule applying retroactively to a conviction that has been finalized are where the "particular conduct of persons covered by the statute [are placed] beyond the State's power to punish" or "where the rule announces new watershed rules of criminal procedure implicating fundamental fairness and accuracy." Id. (internal quotations and citations omitted). Neither applies to Alleyne, and so Alleyne did not apply in Reyes and does not apply to Quinn.

There has been no negative treatment of U.S. v. Reyes – it remains binding Third Circuit law.

Similarly, the Third Circuit ruled that Alleyne does not apply retroactively in its 2014 decision of United States v. Winkelman. 746 F.3d 134 (3d Cir. 2014). Like in Reyes, the Third Circuit noted that the Alleyne rule was announced by the Supreme Court on direct appeal, and the Supreme Court did not declare that the rule would apply retroactively. Id. at 136. The only negative treatment of Winkelman is from the Ninth Circuit on a separate issue. Jones v. U.S., 33 F.4th 1169 (9th Cir. 2022). Like Reyes, Winkelman therefore remains binding.

Reyes and Winkelman appear to be the only cases on point. As such, Defendant's argument that Alleyne should apply retroactively to his 2010 conviction fails.

## VI. CONCLUSION

The Motion for Reconsideration will be denied.

O:\CRIMINAL DEPUTY (Lori)\MEMOS\09-720-2 Quinn Memorandum .docx